# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### AMARILLO DIVISION

| | | |
|---|---|---|
| BARBARA R. TRACY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:23-cv-00084 |
| | § | |
| COMMUNITY SERVICE CREDIT UNION, | § | With Jury Demand Endorsed |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Barbara R. Tracy ("Plaintiff"), by and through counsel, for her Complaint against Defendant Community Service Credit Union ("CSCU" or "Defendant"), states as follows:

### I. INTRODUCTION

1.      Defendant engaged in willful, malicious, coercive, deceptive and harassing actions against Plaintiff in furtherance of Defendant's efforts to illegally collect from Plaintiff, *in personam*, a debt she did not owe, as the debt was discharged in her bankruptcy case, and Plaintiff was subject to the protection of the discharge injunction.  Specifically, Plaintiff alleges that Defendant:  1) failed to update and correct its reporting of a line of credit to ChexSystems credit bureau, even once Plaintiff brought the matter to Defendant's attention, claiming it to be correct; 2) illegally and impermissibly accessed Plaintiff's confidential Equifax consumer report when it was fully aware that the debt was uncollectable and any credit pull would be a discharge violation, such actions being an ongoing intrusion of Plaintiff's right to solitude, seclusion and private affairs; and 3) made misrepresentations to Plaintiff, ChexSystems and Equifax to deceive and coerce Plaintiff to pay the discharged debt, all despite being fully aware that the debt was discharged.  The foregoing actions are part of Defendant's illegal design, implemented by their policies and

procedures, to harass and deceive consumers to pay discharged debts by misrepresenting to them that they still owed such discharged debt or that they had an obligation to take actions to benefit Defendant financially to Plaintiff's detriment. Due to Defendant's acts, Plaintiff has suffered and will continue to suffer grievous mental anguish that undermines the fresh start which was the primary benefit and purpose of Plaintiff filing bankruptcy.

2. Plaintiff claims Defendant violated: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, specifically, 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act ("FCRA"); 2) Tex. Fin. Code § 392.001 *et seq.*, known as the Texas Debt Collection Act ("TDCA"); 3) the common law prohibiting intrusions on seclusion, solitude and private affairs; and 4) the discharge injunction of the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division. Plaintiff seeks to recover from Defendant actual, statutory, and punitive damages, and legal fees and expenses.

## II. PARTIES

3. Plaintiff is a natural person residing in Menifee County, Kentucky, and is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c) and the TDCA, Tex. Fin. Code § 392.001(1).

4. Defendant is a federal credit union that may be served by delivering a summons to its CEO Brenda Hooker, or any other officer, at 250 FM 2821 Road W., Huntsville, TX 77320.

5. Defendant is a "person" and "user" of consumer credit and other financial information, as said terms are defined under the FCRA, 15 U.S.C. § 1681a(b), and "creditor," "debt collector," and/or "third-party debt collector" under the TDCA, Tex. Fin. Code §§ 392.001(3), (6) and (7).

6.      The debt Defendant was attempting to collect from Plaintiff was a "consumer debt," as defined by the TDCA, Tex. Fin. Code § 392.001(2).

7.      Defendant is a furnisher of consumer credit information to Chex Systems, Inc. ("ChexSystems"), TransUnion, LLC ("TransUnion"), Equifax, Inc. ("Equifax"), and Experian Information Solutions, Inc. ("Experian") (collectively, the "Credit Reporting Agencies" or "CRAs").

### III. JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334, and 1367, and 15 U.S.C. § 1681p.

9.      Venue is proper in this district because Defendant conducts business in this district, the Defendant's acts occurred in this district and Plaintiff filed her bankruptcy in this district.

### IV. FACTUAL ALLEGATIONS

**A.      The Subject Debt Was Discharged as to Plaintiff's Personal Liability in Her Bankruptcy Case.**

10.      On January 18, 2022, Plaintiff filed for Chapter 7 relief in Case 22-20006-rlj7 ("Bankruptcy Case") in the United States Bankruptcy Court for the Northern District of Texas, Amarillo Division ("Bankruptcy Court"), and an Order for Relief was entered in the Bankruptcy Case effective on the same day, pursuant to 11 U.S.C. § 301.

11.      Plaintiff filed bankruptcy schedules with her bankruptcy petition which included two separate accounts with Defendant.  In addition to these two accounts, Plaintiff had a line of credit account with Defendant that had been previously closed and charged off in the amount of $1,127.05 on July 28, 2020 (the "Account").  The debts required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.  Also with her bankruptcy

petition, Plaintiff filed a Verification of Creditor Matrix ("Mailing Matrix") which provided Defendant's correct address.

12.     A true and correct copy of the Mailing Matrix is attached hereto as Exhibit "A."

13.     On or about January 18, 2022, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines ("341 Notice") to Defendant by electronic transmission.  The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. § 362.  The bankruptcy electronic service provider did not return the 341 Notice sent to Defendant, creating a presumption it was received by Defendant.

14.     A true and correct redacted copy of the Notice of 341 Notice is attached hereto as Exhibit "B."

15.     On April 20, 2022, the Bankruptcy Court signed an order granting Plaintiff a discharge ("Discharge Order").  The Discharge Order followed Official Form 318, including the explanatory language contained therein.  The Discharge Order discharged Plaintiff from any liability for the debt created by the Account.  Included with the Discharge Order was an explanation of the general injunction prohibiting any attempt to collect discharged debts, warning all creditors, in conspicuous language, that "Creditors cannot collect discharged debts" and that "This order means that no one may make any attempt to collect a discharged debt from the debtors personally.  For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts.  Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally.  Creditors who violate this order can be required to pay debtors damages and attorney's fees."

16.     On or about April 21, 2022, the Bankruptcy Noticing Center sent a copy of the Discharge Order to Defendant by electronic transmission.  This transmission constituted notice to Defendant of the discharge granted in Plaintiff's Bankruptcy Case and the replacement of the automatic stay of 11 U.S.C. § 362 with the discharge injunction imposed by 11 U.S.C. § 524(a).

17.     A true and correct redacted copy of the Discharge Order is attached hereto as Exhibit "C."

18.     Once Plaintiff's debts to CSCU had been discharged, she was assured that she would be protected by the Bankruptcy Court's discharge injunction and all creditors whose debts had been discharged would have to cease any and all collection efforts and report to the credit bureaus that the debt was no longer due and owing.  Unfortunately, that was not the case when Plaintiff, on June 17, 2022, attempted to open a new checking account Traditional Bank, Inc. ("Traditional") and learned she should could not do so because Defendant was still reporting to ChexSystems that the Account was due, owing and delinquent.  Most banks and other financial institutions use ChexSystems as a tool in determining whether to allow a consumer to setup a new deposit account.  Plaintiff tried on two subsequent occasions to set up accounts with other banks but was refused.

19.     At no time during the pendency of Plaintiff's Bankruptcy Case has Defendant or any other person or entity objected to or disputed the details or completeness of the claim regarding the accounts listed on the schedules to Plaintiff's bankruptcy petition.

20.     At no time has Plaintiff reaffirmed the debt with Defendant with any person or entity.

21.     At no time has the Bankruptcy Court declared the debt with Defendant to be non-dischargeable.

**B.     After the Debt Had Been Discharged, Defendant Attempted to Collect the Discharged Debt from Plaintiff, *in Personam*.**

22.     After the debts to Defendant were discharged and the discharge injunction was in effect prohibiting all actions to collect on discharged debt from Plaintiff, *in personam*, Defendant engaged in prohibited, coercive, deceptive, and harassing debt collection activity to collect the discharged debt by failing to update false, inaccurate, negative, incomplete and misleading information to ChexSystems to be included in Plaintiff's credit files and by illegally accessing her Equifax consumer report.

23.     Plaintiff contacted Defendant in June 2022 about the reporting of the Account after she was denied opening a new account with Traditional, but was told that they would not remove the reporting despite the bankruptcy discharge.  She requested her old account contact, Mary, call her, but she never received a call.  Despite Plaintiff's dispute, Defendant, nonetheless, failed to correct their reporting, disclose that the debt had been discharged and persisted in reporting the inaccurate and derogatory information to ChexSystems.  Defendant further failed to update its reporting to ChexSystems on the Account to reference Plaintiff's Bankruptcy Case and discharge.

**1)     Defendant Failed to Update Its Reporting With ChexSystems.**

24.     On or about July 29, 2020, Defendant furnished information on the Account to ChexSystems to be reported on Plaintiff's credit reports, specifically that the status of the Account was closed and "Reported For: Account Abuse," with the "Original Charge Off Amount: $1127.05."  However, after Plaintiff received her discharge, Defendant did not update its reporting to accurately reflect that it had been discharged in Plaintiff's Bankruptcy Case and had a zero balance owed, even after Plaintiff called Defendant and tried to have them correct it.

25.     A true and correct redacted copy of relevant excerpts from Plaintiff's ChexSystems credit report generated on April 11, 2023 is attached hereto as Exhibit "D."

26.    On or about April 7, 2023, Plaintiff tried again to open a bank account with Traditional.  After Traditional ran her credit with ChexSystems, it declined to open an account due to the delinquent report with Defendant.  Traditional gave her a copy of the report it obtained, showing its "Action: Decline," and that Defendant still had not updated its reporting on the subject Account with ChexSystems to accurately show the status of the Account as discharged in bankruptcy with a zero balance owed, as it was still being reported as closed for "account abuse," with a charge-off amount of $1,127.05.

27.    A true and correct redacted copy of relevant excerpts from Plaintiff's ChexSystems report generated by Traditional on April 7, 2023 is attached hereto as Exhibit "E."

**2)    Defendant Made Material Misrepresentations to Equifax and Accessed Plaintiff's Credit Report Without A Legal Purpose.**

28.    Despite the fact that the debts to Defendant were discharged and Plaintiff no longer had a debtor-creditor relationship with Defendant, Defendant misrepresented information about the status of one of her accounts as open, past due and/or owing by Plaintiff to Equifax to acquire access to Plaintiff's confidential credit file so it could obtain information about her to further Defendant's attempts to collect the discharged debt from her.

29.    On or about March 7, 2023, almost a full year after Plaintiff's discharge, Defendant furnished false information to Equifax, representing it had a purported legally permissible purpose to conduct an inquiry on one of Plaintiff's accounts, which Defendant represented was due and owing by Plaintiff.  Defendant's purported permissible purpose, however, was false, because Plaintiff had no post-discharge relationship with Defendant or given permission for her credit reports to be accessed by Defendant.  Defendant made these misrepresentations so it could obtain access to Plaintiff's protected credit file and obtain and use Plaintiff's confidential, personal and

-7-

financial information located in her consumer reports to further Defendant's illegal *in personam* collection efforts.

30.     A true and correct redacted copy of relevant portions of Plaintiff's April 7, 2023 Equifax credit report showing the impermissible pull is attached hereto as Exhibit "F."

31.     At the time Defendant conducted the impermissible account review inquiry, it knew that information about the impermissible inquiry, including the date it requested access to Plaintiff's credit file under a purported legally permissible purpose, would be reported on Plaintiff's credit report for Plaintiff and other third parties reviewing her credit report to see. Defendant's account review inquiry and respective furnishing of false information to Equifax were conducted by Defendant to further its prohibited collection activity against Plaintiff on the discharged debt, by acquiring personal, financial and confidential information about Plaintiff or to deceive Plaintiff into believing the debt was still owed by her and Defendant had a right to access her credit file from Equifax through the reported information about the account review inquiry on her credit report.  Defendant made these misrepresentations to illegally coerce payment of the discharged debt from Plaintiff.

## V. DAMAGES

32.     Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs, as if fully rewritten here.

33.     In addition to any damages previously stated hereinabove, the conduct at issue of Defendant has proximately caused Plaintiff past and future severe mental distress and emotional anguish and a discernable injury to Plaintiff's emotional state; and other damages, evidence for all of which will be presented to the jury.  Moreover, dealing with the consequences of Defendant's actions has cost Plaintiff time and mental energy, which are precious to her.

34.    Plaintiff was shocked and humiliated at being denied the right to open a bank account due to a debt that had been discharged in her bankruptcy.  She thought the bankruptcy would be her salvation, but being denied not once, but three times, made her worry that she would never be able again to conduct business with the convenience of a bank account.  She worried something had gone wrong with her bankruptcy and she did not know how she could survive without a safe place to keep her money and a simple method by which could pay her bills as they came due.

35.    Plaintiff justifiably fears and believes that Defendant will continue to access her private personal and financial information absent this Court's intervention.

36.    Plaintiff justifiably fears and believes that Defendant will continue to pursue Plaintiff in legal (and perhaps non-legal) ways in connection with the discharged debt absent this Court's intervention.

37.    When Plaintiff's bankruptcy was discharged, Plaintiff thought she had finally realized her fresh start and her financial troubles were over.  Plaintiff was devastated when she was unable to open a bank account after her bankruptcy was over.  This brought back all of the negative emotions she had experienced in having to file bankruptcy.  She felt anger and frustration, fearing her bankruptcy had been a waste of time.  Plaintiff began to worry that the bankruptcy had not worked and she was frustrated that she was denied the "fresh start" that she was entitled to under the bankruptcy code and worried about how this would impact her life having to live without a bank account.

38.    Defendant's actions have damaged Plaintiff by causing her extreme fear, frustration, humiliation and mental anguish such that she has not been able to sleep at night, has been depressed and distracted and, until this matter is resolved, can no longer enjoy the time she

has with her family.  The conduct of Defendant has substantially frustrated the discharge injunction and has cost Plaintiff unnecessary time, effort and expense in seeking to enforce her rights to the protections of the discharge injunction.  As a result of the actions and inactions of Defendant, Plaintiff has been deprived of part of her fresh start and cannot look forward to a clear field for future endeavors.

39.     At all relevant times, Defendant knew and had actual knowledge that Plaintiff was a debtor in a bankruptcy case, its debt had been discharged and she was protected from any direct or indirect collection acts from creditors and debt collectors whatsoever by virtue of the discharge injunction provided in 11 U.S.C. § 524.

40.     At all relevant times, Defendant knew, and it continues to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectable, but Defendant made a corporate decision, knowingly, willfully, maliciously, and contrary to its knowledge of bankruptcy law, to attempt to collect from Plaintiff *in personam* on the debt it knew was discharged in Plaintiff's Bankruptcy Case.  Moreover, there was no longer a debtor-creditor relationship between Plaintiff and Defendant after her bankruptcy discharge and Defendant had no right to engage in any of its actions at issue.

41.     Defendant was aware that its collection activities would and did damage Plaintiff and her ability to enjoy life and her fresh start guaranteed by the U.S. Bankruptcy Code.

42.     Plaintiff believes that, after reasonable discovery in this case, she will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiff, and with the actual knowledge that such actions were in violation of the law.

43.     Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant's actions at issue are an integral part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting debts that had been included and discharged in the debtors' respective bankruptcy cases.

44.     Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant has been involved in numerous disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws Defendant is well aware.

45.     Plaintiff believes that, after reasonable discovery, she will be able to show that Defendant has engaged in a pattern and practice of wrongful and unlawful behavior, in accordance with its established policies and procedures, with respect to knowingly, willfully, intentionally, and maliciously attempting to collect on debts discharged in bankruptcy and by failing to accurately update account reporting and by accessing Plaintiff's credit report in furtherance of Defendant's collection attempts.  Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant.  Moreover, Plaintiff's injuries resulted from Defendant's malice, and/or willful and intentional misconduct, entitling Plaintiff to punitive damages.

46.     Damages should be awarded in this case not only to compensate for the losses or injury presumed and sustained by Plaintiff, but also to coerce Defendant into compliance with the orders issued by this Bankruptcy Court and other bankruptcy courts in which Defendant may come into contact.

47.     Neither cost-benefit analysis nor proportionality is allowed in determining any element of damages awarded with the exception of punitive damages sought.

48.    An award of damages to cover the value of any loss, any out-of-pocket expenses or cost incurred, including the value of the personal time of Plaintiff in having to deal with the conduct of Defendant, and in having to participate in this proceeding is required.

49.    Damages for Plaintiff's emotional distress and mental anguish caused by Defendant's violations of the Court's discharge injunction are recoverable, because actual damages include these types of economic and non-economic harm.

50.    Plaintiff's emotional distress is significant in that it is not and was not fleeting, inconsequential or trivial from Plaintiff's perspective.  This is evident from the fact that the filing of her Bankruptcy Case was Plaintiff's attempt to alleviate the otherwise insurmountable social and economic problems she faced, as well as preserve the dignity she held for herself.  A failing in the effectiveness of the discharge injunction that was promised to Plaintiff caused her emotional distress and mental anguish that Plaintiff originally intended to halt to return and intensify.

51.    This emotional distress and mental anguish is distinct from the anxiety and pressures inherent with filing bankruptcy, in that the bankruptcy process was intended to take the pressure off of Plaintiff from having to deal with the very actions and conduct of Defendant complained of here, and therefore, the actions and conduct of Defendant cannot be deemed inherent in the bankruptcy process.

52.    Due to Defendant's conduct, Plaintiff was forced to hire counsel and her damages include reasonable attorneys' fees incurred in prosecuting this claim.

## VI.  VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

53.    Plaintiff will be able to show, after reasonable discovery, that all Defendant's actions at issue were taken by its employees, agents, servants, or representatives and were within the line and scope of such individuals' (or entities') express or implied authority, through

employment, agency, or representation, which imputes liability on Defendant for all such actions under the doctrine of *respondeat superior* and/or vicarious liability.

## VII. GROUNDS FOR RELIEF - COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et seq.*)

54.    28.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as well the section above entitled "Damages," as if fully rewritten here.

28.    <u>Impermissible Credit Pull</u>: First, Plaintiff brings her claim against Defendant under the FCRA under 15 U.S.C. §§ 1681n and o, entitling Plaintiff to relief against Defendant for damages and attorney's fees for intentionally, knowingly or recklessly obtaining and using Plaintiff's consumer report(s) post-discharge under false pretenses and without a permissible purpose in violation of the requirements imposed by the FCRA, respectively.

29.    Once the debt on the Account was discharged in Plaintiff's Bankruptcy Case, Defendant had no legal right to obtain Plaintiff's consumer report from Equifax. After filing bankruptcy, Plaintiff never sought credit from Defendant, nor did she authorize Defendant to pull her credit reports from the CRAs.

30.    Post-discharge, in its *in personam* pursuit for Plaintiff to pay the discharged debt, Defendant intentionally accessed Plaintiff's consumer report with Equifax and intentionally, or with reckless disregard for the truth, made misrepresentations to Equifax in order to gain access to her consumer report and obtained and used her consumer report containing her confidential, personal and financial information by conducting at least one account review inquiry with no legally permissible purpose.

31.    The FCRA establishes very specific limits as to when and why an entity can obtain a consumer report:

(f) CERTAIN USE OR OBTAINING OF INFORMATION PROHIBITED. – A person shall not use or obtain a consumer report for any purpose unless –

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b (f).

32.     Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

(a) IN GENERAL. – * * * any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

＊＊＊

(3) To a person which it has reason to believe –

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

＊＊＊

(F) otherwise has a legitimate business need for the information-

* * *

*See* 15 U.S.C. § 1681b (a)(3).

33.     Section 1681a(d)(1) defines a "consumer report" as:

(d) CONSUMER REPORT. –

(1) IN GENERAL. – The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of servicing as a fact in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681(b) of this title.

15 U.S.C. § 1681a (d)(1).

34.    On March 7, 2023, after the Discharge Order was signed and entered in Plaintiff's Bankruptcy Case, Defendant intentionally, or with reckless disregard for the truth, furnished false information to Equifax misrepresenting that it had permission or another legally permissible purpose to conduct an inquiry and review of one of Plaintiff's accounts, so it could gain access to Plaintiff's protected consumer reports with Equifax and impermissibly obtain and use her confidential, personal and financial information in her consumer report in its continued pursuit to collect on the discharged Account.

35.    Defendant represented to Equifax that its alleged permissible purpose for conducting a post-discharge review of one of Plaintiff's accounts was because the account was open, due, owing and/or collectable from Plaintiff, which was false.  At no time had Plaintiff sought new credit from Defendant, so there was no permissible purpose for Defendant to pull Plaintiff's credit based on these reasons.  Accordingly, there was no permissible purpose for Defendant to obtain and use Plaintiff's consumer report nor did it have her consent to do so.

55.    When requesting and obtaining Plaintiff's credit information from Equifax as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information.

56.    Defendant had actual knowledge that, as of Plaintiff's bankruptcy discharge in April 2022, Defendant was legally prohibited from pursuing any collection against or even communicating with her about the Account to justify an account review of her credit information. As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit information.

57.    In addition, when Defendant accessed Plaintiff's consumer report with Equifax, her bankruptcy was clearly noted in the information section of the report, so it had actual knowledge of the bankruptcy discharge.  Defendant has actual knowledge that Plaintiff did not request credit from or otherwise initiate a credit transaction with Defendant at any time after April 2022.  As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit information.

58.    For Defendant to request and obtain Plaintiff's private personal and financial information in the face of actual knowledge that it had no permissible purpose to do so constitutes a knowing and willful violation of the FCRA.

59.    At all relevant times, Defendant was trying to gain confidential information about Plaintiff in furtherance of its *in personam* collection efforts on the subject debt.  If it denies this was its purpose, then Defendant was trying to gain access to Plaintiff's confidential, personal and financial information which is protected from access without a permissible purpose by law.

60.    When requesting and obtaining Plaintiff's credit information from Equifax, as described herein, Defendant had actual knowledge that it did not have a permissible purpose to obtain such information, was fully aware that the debt was discharged, and that the debt was not collectable from Plaintiff.  Defendant had actual knowledge that, after the discharge being granted, the underlying Account was closed and the discharge injunction was in effect, legally prohibiting Defendant from pursuing any *in personam* collection against or even communicating with Plaintiff about the Account.  As such, Defendant had actual knowledge that it did not have a permissible purpose to access Plaintiff's credit reports with the credit bureaus.

61.    At the time Defendant impermissibly accessed Plaintiff's credit report, Defendant had actual knowledge that Plaintiff did not request new credit from it or otherwise initiate a credit

-16-

transaction with Defendant at any time since her bankruptcy filing or discharge. Defendant had actual knowledge that Plaintiff had not authorized it to pull her credit and obtain and use her consumer reports from Equifax, because there was not a debtor-creditor relationship between Plaintiff and Defendant post-discharge. Accordingly, Defendant knew it was prohibited from obtaining and using Plaintiff's consumer reports and her confidential and personal information kept therein by any of the CRAs post-discharge as it did.

62.     Defendant's impermissible obtaining or using of Plaintiff's private personal and financial information held in her consumer report from Equifax, when Defendant had actual knowledge it had no legally permissible purpose to do so, constitutes Defendant's knowing, intentional, and willful violations of the FCRA under 15 U.S.C. § 1681n reckless, or alternatively and at a minimum, negligent violations under 15 U.S.C. § 1681o.

63.     For Defendant to request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge it had no permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

64.     After a reasonable time to conduct discovery, Plaintiff believes she can prove that Defendant requested and obtained Plaintiff's private personal and financial information from Equifax for the illegal purpose of attempting to collect on the underlying discharged debt. Furthermore, Defendant's illegal pull has been published as part of Plaintiff's credit report and is viewable by any creditor or potential creditor accessing her Equifax report.

65.     After a reasonable time to conduct discovery, Plaintiff believes she can prove that Defendant used false pretenses, namely the representation that it intended to use Plaintiff's consumer report for account review or collection purposes, to obtain Plaintiff's private personal

and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

66.     After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes she will be able to show Defendant promised through its subscriber agreements or contracts with the subject CRAs to properly furnish accurate information to access and review consumer reports for accounts that have been included and discharged in bankruptcy; but Defendant has willfully, maliciously, recklessly, wantonly, and/or negligently failed to follow these requirements and agreements, which has resulted in its intended consequences of conducting the inquires at issue in furtherance of its attempts to collect the debt, including, but not limited to, Plaintiff's consumer report(s) at issue.

67.     After being afforded a reasonable time to conduct discovery, Plaintiff believes she can show that, at all relevant times, Defendant knew, and continues to know, that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer collectable from discharged debtors, but Defendant has made a corporate decision to intentionally, willfully or recklessly and maliciously act contrary to this knowledge in its calculated decision to violate its duty and requirement to furnish accurate information to the CRAs, by furnishing false information of a purported permissible purpose to access the consumer reports of and obtain confidential personal and credit information and consumer reports for discharged consumers, alleging accounts with discharged debt are open and collectable, all to further Defendant's illegal *in personam* collection attempts on discharged debt.

68.     As a direct and proximate result of Defendant's conduct as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of her privacy, entitling Plaintiff to an

-18-

award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. §§ 1681n or o.

69.     As a direct and proximate result of Defendant's conduct as outlined above, Plaintiff has suffered and will continue to suffer substantial injury including, but not limited to, mental anguish and emotional distress from Defendant's ongoing attempts to collect the discharge debt, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

70.     Defendant's actions at issue have caused Plaintiff to suffer embarrassment, mental anguish, inconvenience, and other pecuniary and non-pecuniary damages.

71.     Defendant's conduct reveals a conscious and reckless disregard of Plaintiff's rights. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to statutory damages in the amount of up to $1000.00 per violation pursuant 15 U.S.C. § 1681n(a)(2). Because Defendant's impermissible acquisition and use of Plaintiff's consumer report(s) will have a continuing adverse impact on Plaintiff, Defendant is liable for any future harm suffered by Plaintiff because of Defendant's actionable conduct.

72.     The conduct at issue of Defendant has proximately caused Plaintiff past and future mental distress; emotional anguish and a discernable injury to Plaintiff's emotional state; harm and resulting injuries; and other damages, evidence for all of which will be presented to the jury.

## VIII. GROUNDS FOR RELIEF- COUNT II

## TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

73.     Plaintiff repeats, re-allege, and incorporate by reference the foregoing paragraphs, as if fully rewritten here.

74.    Defendant has violated the Texas Finance Code in numerous ways, including, but not limited to, the following:

a)    Tex. Fin. Code § 392.301(a)(8).  "THREATS OR COERCION.  (a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: ... (8) taking an action prohibited by law."

Because 1) the discharge injunction has force of law and prohibits creditors from attempting to collect debts included or discharged in bankruptcy, *in personam*, 2) the FCRA requires a permissible purpose to access a consumer's report, and 3) the common law protects Plaintiff from intrusions to her solitude, seclusion, and private affairs, Defendant's actions at issue of a) failing to update the reporting of a discharged account in an attempt to coerce Plaintiff into paying off the discharged debt despite demands b) illegally accessing Plaintiff's Equifax consumer report, c) intentionally or recklessly misrepresenting to Plaintiff and to ChexSystems and Equifax that the discharged Account was still collectable in violation of the discharge injunction, also violated the TDCA, and d) failing and refusing to correct the reporting after Plaintiff contacted Defendant and disputed the reporting.

b)    Tex. Fin. Code § 392.304(a)(8).  "FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS.    (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: ... (8) misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."

Defendant misrepresented to Plaintiff, ChexSystems and Equifax that the account, which had been discharged, was collectable and it had the right to collect on the account.  Additionally, Defendant misrepresented information to Equifax in order to allow it to access Plaintiff's credit reports so it could to get information to

aid in its efforts to collect the discharged account or get Plaintiff to act in a way that benefited Defendant.  These were misrepresentations of the character, extent or amount of the subject debt and violated the TDCA.

    c)     Tex. Fin. Code § 392.304(a)(19).  "FRAUDULENT, DECEPTIVE, OR MISLEADING REPRESENTATIONS.  (a) Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs the following practices: … (19) using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

For the reasons stated in the preceding paragraphs (a – b), Defendant intentionally tried to coerce or deceive Plaintiff into paying the debt when Defendant knew the account was discharged in Plaintiff's bankruptcy, rendering the debt legally uncollectable from Plaintiff *in personam*.

27.    Regarding Plaintiff's claim against Defendant under Tex. Fin. Code § 392.304(a)(8), all of Defendant's misrepresentations made to Plaintiff, ChexSystems and Equifax about the character, extent, amount or status of the subject discharged debt were made by design to deceive Plaintiff into believing she was still personally liable for the discharged debt, and did in fact cause Plaintiff to have such belief.  Defendant's misrepresentations made to Plaintiff caused and resulted in her thinking differently about the character, extent, amount or status of the subject discharged debt.  After she received her bankruptcy discharge, Plaintiff believed she was no longer personally liable for the debt on the account; however, Defendant's misrepresentations at issue, made her think perhaps her bankruptcy attorney made an error, or there was some issue about which she was unaware, that caused the debt to not be discharged in her Bankruptcy Case and she had to pay it.  Defendant's actions caused and exacerbated her mental anguish and emotional distress.

75.     In furtherance of its efforts to illegally and deceptively collect on the Account, Defendant failed to accurately report and update the inaccurate, negative information on the Account it had furnished to ChexSystems to be reported on Plaintiff's consumer report.  After Plaintiff received a discharge on the Account in her Bankruptcy Case, Defendant should have furnished accurate information about the status of the Account to the CRAs, that the Account was discharged in bankruptcy and there was a zero-balance.

76.     Under Tex. Fin. Code Ann. § 392.403, Defendant's actions make it liable for Plaintiff actual damages, statutory damages, injunctive relief, costs, and reasonable attorney's fees. Also, Plaintiff's injuries resulted from Defendant's malice, actual fraud and/or willful and intentional misconduct, entitling Plaintiff to recover punitive damages.

77.     Because of Defendant's conduct, Plaintiff were forced to hire counsel to pursue this action, and Plaintiff's recoverable damages include her reasonable attorney's fees incurred in prosecuting this claim.

### IX.  GROUNDS FOR RELIEF - COUNT III
#### INTRUSION OF SECLUSION, SOLITUDE AND PRIVATE AFFAIRS

65.     Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as well the section above entitled "Damages," as if fully rewritten here.

66.     Defendant intentionally, recklessly and maliciously intruded on Plaintiff's *solitude, seclusion and private affairs* when Defendant, after the debt had been discharged, misrepresented to Equifax that the one of Plaintiff's accounts was open and the debt collectable so that it could gain access to Plaintiff's private and sensitive financial information that would be invaluable in its continuing attempts to collect the discharged debt.  This intrusion was ones that would be highly offensive to a reasonable person, because confidential and sensitive personal and financial information is included in a consumer report.  Post-discharge, Plaintiff had not consented to

Defendant pulling her consumer report and there was no permissible purpose for Defendant to obtain Plaintiff's consumer report post-discharge. The wrongful acts of Defendant caused injuries to Plaintiff.

67.    Further, these intrusions were of a kind that would be highly offensive to a reasonable person because each involved the intentional or reckless misrepresentation of facts in violation of federal or state law(s) and were designed to injure Plaintiff both physically and financially. Plaintiff believes that, after time for reasonable discovery, she will be able to show that this information was sought to aid Defendant in its continuing attempts to collect the discharged debt or to circumvent the requirements of the FCRA that require consent or a permissible purpose for accessing a person's consumer reports.

68.    These intrusions were also of a kind highly offensive to a reasonable person since dealing with Defendant's actions is a harsh reminder of Plaintiff's bankruptcy and has rekindled all the negative emotions associated with her financial troubles and having to file bankruptcy which she was trying to forget; and the illegal intrusion into her private financial information contained in her consumer report was unsettling as Plaintiff had no idea who at Genco was looking at such information and for what purpose other than to harm her.

69.    At all pertinent times, Plaintiff had a reasonable and lawful expectation not to be contacted and harassed by Defendant after the debt was discharged and to believe her private and protected information held by the CRAs would not be obtained by a company that had no legal right to access or obtain this information. Plaintiff was entitled to a "fresh start" after going through the bankruptcy process and this was frustrated by Defendant's outrageous disregard for federal and state law(s). The illegal access to Plaintiff's consumer report(s) were intrusions on Plaintiff's solitude, seclusion and private affairs. Defendant's wrongful acts caused injury to

Plaintiff, which resulted in extreme emotional anguish and distress which caused him fear, stress, headaches, insomnia, embarrassment, worry, distraction and loss of time and inconvenience.

70.     Plaintiff's injuries were intentionally inflicted and resulted from Defendant's malice, which entitles Plaintiff to exemplary damages under Texas Civil Statutes and Remedies Code § 41.003(a).

## X. GROUNDS FOR RELIEF - COUNT IV

### VIOLATION OF THE DISCHARGE INJUNCTION

78.     Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs as well the section above entitled "Damages," as if fully rewritten here.

79.     At all material times, Defendant had actual knowledge of Plaintiff's Bankruptcy Case and of the discharge of the debt on the Account.

80.      Post-discharge, Defendant attempted to collect from Plaintiff personally on the Account and the discharged debt, as evidenced by Defendant's inaccurate credit reporting and illegal access to her consumer reports.

81.     Defendant's actions were willful acts in furtherance of its efforts to collect the discharged debt from Plaintiff, in violation of the discharge injunction imposed by 11 U.S.C. § 524(a).  Further, Defendant's acts were harassing and attempts to coerce and deceive Plaintiff into paying the discharged debt.  Defendant's failure to comply with the aforesaid laws, despite Defendant being on notice of Plaintiff's Bankruptcy Case and discharge and the effect of Plaintiff's discharge, illustrates Defendant's utter contempt for federal law and the discharge injunction.

82.     The actions of Defendant constitute harassment and coercive and/or deceptive actions taken to collect a discharged debt from Plaintiff, in gross violation of the discharge injunction imposed by 11 U.S.C. § 524(a)(1)-(3).

83.     The facts and background stated above demonstrate that Defendant knowingly and willfully violated the orders and injunctions of the Bankruptcy Court issued in the Bankruptcy Case.  After this *prima facie* showing by Plaintiff, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability.  Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiff must prevail on her claims, and Defendant must be held liable for knowingly and willfully violating the orders and injunctions of the Bankruptcy Court.  Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant.  Any allegation of a good faith exception should not be allowed.

84.      Specifically, Defendant violated that part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. § 524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived…."

85.     There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the discharge injunction.

86.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here.  No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

87.    Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court. Any burdening of Plaintiff with an obligation to police the misconduct of Defendant would be a complete derogation of the law.  It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance.  Any attempt by Defendant to mount such a defense in this proceeding would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court, which is prohibited.  Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant.  No defense of failure to mitigate should be allowed.

88.    Plaintiff has been injured and damaged by Defendant's actions, and Plaintiff is entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

89.    Due to Defendant's conduct, Plaintiff were forced to hire counsel, and her damages include reasonable attorney's fees incurred in prosecuting her claims

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Barbara R. Tracy prays the Court:

A.    Enter judgment in favor of Plaintiff and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees for Defendant's violations of the FCRA, the TDCA, intrusion upon seclusion, solitude and private affairs, and for violations of the discharge injunction;

B.    Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

D.      Grant such other and further relief, in law or equity, to which Plaintiff might show

she is justly entitled.

Respectfully submitted,

/s/ James J. Manchee
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
MANCHEE & MANCHEE, PC
5048 Tennyson Parkway, Ste 250
Plano, Texas 75024
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFF

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

May 15, 2023                    /s/ James J. Manchee
Date                            James J. Manchee